**STATE of Missouri, Respondent,**

v.

**Samuel CRUMP, Movant.**

No. 52860.

Missouri Court of Appeals, Eastern District, Division Two.

Jan. 12, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 24, 1988.

Application to Transfer Denied April 19, 1988.

Janis C. Good, Asst. Public Defender, St. Louis, for movant.

William L. Webster, Atty. Gen., Karen A. King, Asst. Atty. Gen., Jefferson City, for respondent.

PUDLOWSKI, Judge.

At approximately 7:00 p.m. on February 10, 1986, Police Officers Willis Cook and Terry Kaelin were called to a vacant home in the City of St. Louis to investigate a possible burglary. When the officers arrived, they found that the back door had been kicked open. Upon inspecting the inside of the building, the police found that the fireplace mantel had been removed from the wall and that the sink in the bathroom had been pried loose from the wall. Defendant's brother was apprehended as he attempted to climb out of

a second-story window onto a small porch. The defendant was found hiding in the basement of the building and was arrested.

The defendant, Samuel Crump, is a career criminal whose record is replete with at least eleven convictions for burglary in the second degree and stealing, and one conviction for trespass first degree and tampering second degree. At the time of his arrest Crump had been out of the penitentiary and on parole for only eight days. Crump was convicted by a jury of burglary in the second degree and was sentenced to ten years imprisonment.

On appeal the defendant argues that (1) the prosecutor improperly used his peremptory challenges to eliminate blacks from the jury panel; (2) the trial court erred by improperly admitting evidence of the defendant's prior convictions; and (3) the trial court erred in responding to a question asked by the jury during its deliberation.

In his first point the defendant argues that he was deprived of the equal protection of the law and his due process rights by the prosecutor's use of her peremptory challenges which he alleges was discriminatory. He further argues that the court erred under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) in accepting the reasons given by the prosecutor for striking these jurors.

The thirty-six member venire was composed of sixteen black and twenty white members. After the court accepted both parties' strikes for cause, the prosecutor used her peremptory challenges to eliminate six blacks from the venire. The petit jury that was ultimately selected was comprised of five black and seven white members. The alternate juror was also black.

The arguments of both parties center around the reasons given by the prosecutor for exercising her peremptory challenges. The defendant argues that the reasons given for striking the six blacks were not neutral and thus were racially motivated. The state argues to the contrary. As will be explained below, we need not address this issue.

The Kentucky trial that gave rise to the *Batson* decision involved a black defendant who was tried and convicted by an all white jury. On appeal the Supreme Court recognized that the state denies a black defendant the equal protection of the law when it puts him on trial before a jury from which members of his race have been purposefully excluded. *Batson,* 106 S.Ct. at 1716. Such exclusion denies the defendant the protection that is afforded when he is tried before a jury of his peers. *Id.* at 1717. A jury is described as a body composed of the peers or equals of the person whose rights it is selected or summoned to determine. *Batson,* 106 S.Ct. at 1717 (citing *Strauder v. West Virginia,* 100 U.S. (10 Otto) 303, 308, 25 L.Ed. 664 (1880).

In order to assure such protection the *Batson* court formulated a test to determine whether a black defendant has made a prima facie showing of purposeful discrimination in the selection of the petit jury through the state's use of peremptory challenges. First, the defendant must show that he and the excluded jurors are members of the same cognizable racial group. Second, the defendant is entitled to rely on the fact that the peremptory challenge constitutes a jury selection process that permits discrimination. Third, the defendant must show that these facts and all relevant circumstances raise an inference that the prosecutor used her peremptory challenges to exclude veniremen from the petit jury on account of race. In deciding whether the defendant has made a prima facie showing the reviewing court is required to give substantial deference to the decision of the trial judge. *Batson,* 106 S.Ct. at 1723. Until the defendant makes a prima facie showing, the reasons given by the state for excluding veniremen are irrelevant. After the defendant makes his case, however, the burden shifts to the state to articulate a neutral and reasonably specific explanation of his legitimate reason for exercising the challenge. *Id.* at 1723, 1724 n. 20.

While this specific issue has never been before this court, the language and spirit of *Batson* as well as notions of fundamental fairness lead us to the conclusion

that a black defendant cannot complain that he was denied the equal protection of the law when he is tried by a jury which is forty-two percent black. Supreme Court recognized that the ultimate issue in *Batson* was whether the state discriminated in the jury selection process. In discussing the circumstances that may give rise to an inference of purposeful discrimination the court stated that they could not "attribute to chance the *absence* of black citizens on a particular jury array where the selection mechanism is subject to abuse." *Id.* at 1723 (emphasis added). In providing reasons for exclusions the state must demonstrate that "permissible racially neutral selection criteria and procedures have produced the *monochromatic* result." *Id.* at 1721 (citing *Alexander v. Louisiana*, 405 U.S. 625, 632, 92 S.Ct. 1221, 1226, 31 L.Ed.2d 536 (1982)). (Emphasis added). In the present case the petit jury was not monochromatic; nor was there an absence of black members. The wording of *Batson* and the principles that form the foundation for the decision suggest that *Batson* applies to the situation where a black defendant is tried before an all white jury. The defendant, on the other hand, urges us to focus solely on the means used to select the petit jury and to ignore the end result. Carried to the extreme the defendant's argument would produce bizarre results. Picture, for example, a venire composed of thirty-six blacks. If the state uses its peremptory challenges to eliminate six members and fails to articulate what the defendant would deem legitimate, neutral reasons, the black defendant could raise a *Batson* challenge despite the fact that he was tried by an all black jury. This result is against the spirit of *Batson* and defies rationality.

■ In applying the foregoing to the case at bar we note that the defendant easily makes the first two parts of his prima facie showing; he is a member of the same racial group as the excluded jurors; and he may rely on the fact that the peremptory challenge allows discrimination in jury selection. However, the defendant fails to show how these facts and relevant circumstances give rise to an inference of purposeful discrimination. The fact that five blacks remained on the jury panel after the prosecutor used her peremptory challenges undercuts any inference of discrimination that may arise. The defendant fails to make a prima facie case and accordingly his first point is denied.

■ In his second point the defendant argues that the trial court erred in refusing to grant a mistrial when the prosecutor asked the defendant whether his prior convictions had been for stealing in the same neighborhood as the offense for which he was being tried. After the defendant had admitted his eleven convictions for burglary and stealing, the prosecutor asked him, "In these other burglaries that you've been convicted of and stealing, weren't they all in that same area?" Before the defendant answered the question, defense counsel objected, made a motion for a mistrial and asked that the jury be instructed to disregard the question. The motion was denied and the jury was so instructed.

The general rule is that when an improper question is asked but not answered, there is no prejudicial error. *State v. Morgan*, 653 S.W.2d 257, 258 (Mo.App.1983). Therefore, assuming *arguendo* that the question was improper, it was not prejudicial. Even if the question had been answered, the curative instruction given by the court to the jury would have purged any such testimony of any prejudice. We find that the trial court did not abuse its discretion in denying defendant's motion for a mistrial. *State v. Pirtle*, 652 S.W.2d 272, 273 (Mo.App.1983).

■ In his final point the defendant argues that the trial court committed reversible error in responding to a question propounded by the jury during its deliberation. After deliberating for approximately four and one-half hours the jury submitted the following question: "We have reached a verdict on trespass number one. We have not been able to reach a decision on burglary number two. What is the consequence if the jury is unable to come to a consensus on the burglary two? If we find guilty on trespass one, would retrial occur?" The

court responded, over an objection by defense counsel: "In accordance with the instructions, you must arrive at *one* verdict only."

Appellant argues that the response given by the jury had an "extremely coercive effect on the jurors." This contention is totally unsupported by the record. The jury had before them two verdict directors; one submitting burglary in the second degree and one submitting trespass. Trespass is a lesser included offense of burglary in the second degree. The trespass instruction was drafted in compliance with MAI–CR2d 2.05 and clearly indicated that the defendant could not be found guilty of both trespass and burglary in the second degree. The law is clear. When the court's response to the jurors' question is a correct statement of the law and does not confuse or mislead them no error is shown. *State v. Neal,* 685 S.W.2d 271, 274 (Mo. App.1985). The response given by the judge in this case met that standard. The judgment of the trial court is affirmed.

STEPHAN, P.J., and DOWD, J., concur.