STATE of Missouri,
Plaintiff–Respondent,

v.

Keith McCRADY, Defendant–Appellant.

No. 52972.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 31, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 1988.

Robert L. Swearingen, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Karen A. King, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KELLY, Judge.

Keith McCrady appeals from a jury conviction of carrying a concealed weapon, § 571.030 RSMo 1986. The trial court, hav-

ing found him to be a persistent offender, § 558.016 RSMo 1986, sentenced him to a term of five years of imprisonment. We affirm.

The state's evidence showed that on October 4, 1986, appellant lived in an apartment on the second floor in the City of St. Louis. As Lonnell Essex, who lived in a first floor apartment at the same address, approached the appellant's residence, the appellant jumped from the porch and stated, "I'm strapped," meaning that he carried a gun. At that point, Mr. Essex did not see a gun. Appellant then walked up the street, pulled out a gun and fired a shot. The police were called. While the police were questioning Mr. Essex and his family, appellant again appeared walking up the street, at which point Mr. Essex pointed appellant out to the police. During a pat-down search of the appellant, police discovered a handgun concealed within his jacket.

In his sole point on appeal, appellant contends the court erred in denying appellant's motion to quash the jury panel because the prosecuting attorney's use of peremptory challenges was racially discriminatory. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The venire consisted of 31 persons, including 17 black, 13 white, and one oriental. The state used five of its six peremptory strikes to remove blacks from the venire. The jury that was ultimately selected was composed of eight blacks and four whites. The trial court noted that:

at the present time there is a fair panel, jury panel, for purposes of the trial in this case even though I have stated on the record that several of the grounds that were mentioned by the prosecutor in my view were not sufficient for his peremptory challenge of a minority.

So that's the reason I'm going to deny the motion of the defendant at this time to quash this prospective jury panel, that I believe the panel as it is now constituted is a fair panel for purposes of trial in this case, and the fact that there may have been some challenges that I would personally disagree with on the grounds that those few cases do not raise a con-

stitutional violation of this defendant's rights because of the panel as it is now constituted.

The state's use of its strikes when considered in isolation might raise the inference of racial intent. The paramount question is, however, whether it led to a prima facie case of discrimination.

We rely on *State v. Crump*, 747 S.W.2d 193 (Mo.App.1988). In *Crump*, the thirty-six member venire was composed of sixteen black and twenty white members. After the court accepted both parties' strikes for cause, the prosecutor used her peremptory challenges to eliminate six blacks from the venire. The petit jury that was ultimately selected was comprised of five blacks and seven white members. The alternate juror was also black.

The court in *Crump* paraphrased the test that was formulated in *Batson* to determine whether a black defendant has made a prima facie showing of purposeful discrimination in the selection of the petit jury through the state's use of peremptory challenges.

First, the defendant must show that he and the excluded jurors are members of the same cognizable racial group. Second, the defendant is entitled to rely on the fact that the peremptory challenge constitutes a jury selection process that permits discrimination. Third, the defendant must show that these facts and all relevant circumstances raise an inference that the prosecutor used her peremptory challenges to exclude veniremen from the petit jury on account of race. In deciding whether the defendant has made a prima facie showing, the reviewing court is required to give substantial deference to the decision of the trial judge. *Batson*, 106 S.Ct. at 1723. Until the defendant makes a prima facie showing, the reasons given by the state for excluding veniremen are irrelevant. After the defendant makes his case, however, the burden shifts to the state to articulate a neutral and reasonably specific explanation of his legitimate reason for exercising the challenge.

*Crump,* 747 S.W.2d at 195. [citing *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 1723, 1724 n. 20, 90 L.Ed.2d 69 (1986)].

The court in *Crump* went on to apply the test to a black defendant who was tried and convicted by a jury comprised of five blacks and seven whites.

> While this specific issue has never been before this court, the language and spirit of *Batson* as well as notions of fundamental fairness lead us to the conclusion that a black defendant cannot complain that he was denied the equal protection of the law when he is tried by a jury which is forty-two percent black. Supreme Court recognized that the ultimate issue in *Batson* was whether the state discriminated in the jury selection process. In discussing the circumstances that may give rise to an inference of purposeful discrimination the court stated that they could not "attribute to chance the *absence* of black citizens on a particular jury array where the selection mechanism is subject to abuse." *Id.* [106 S.Ct.] at 1723 (emphasis added). In providing reasons for exclusions the state must demonstrate that "permissible racially neutral selection criteria and procedures have produced the *monochromatic* result." *Id.* at 1721 (citing *Alexander v. Louisiana,* 405 U.S. 625, 632, [92 S.Ct. 1221, 1226, 31 L.Ed.2d 536] (1982). (emphasis added). In the present case the petit jury was not monochromatic; nor was there an absence of black members. The wording of *Batson* and the principles that form the foundation for the decision suggest that *Batson* applies to the situation where a black defendant is tried before an all white jury. The defendant, on the other hand, urges us to focus solely on the means used to select the petit jury and to ignore the end result. Carried to the extreme the defendant's argument would produce bizarre results. Picture, for example, a venire composed of thirty-six blacks. If the state uses its peremptory challenges to eliminate six members and fails to articulate what the defendant would deem legitimate, neutral reasons, the black de-

> fendant could raise a *Batson* challenge despite the fact that he was tried by an all black jury. This result is against the spirit of *Batson* and defies rationality.

> In applying the foregoing to the case at bar we note that the defendant easily makes the first two parts of his prima facie showing; he is a member of the same racial group as the excluded jurors; and he may rely on the fact that the peremptory challenge allows discrimination in jury selection. However, the defendant fails to show how these facts and relevant circumstances give rise to an inference of purposeful discrimination. The fact that five blacks remained on the jury panel after the prosecutor used her peremptory challenges undercuts any inference of discrimination that may arise. The defendant fails to make a prima facie case and accordingly his first point is denied.

*Crump,* 747 S.W.2d at 195–96.

Relying on *Crump,* we find that in the instant case the appellant has failed to make a prima facie case of discrimination. We need not address the appellant's contention that the reasons given by the prosecutor for striking the five blacks were not neutral and, therefore, were racially motivated. Here, the fact that eight blacks remained on the jury panel after the prosecutor used his peremptory challenges undercuts any inference of discrimination. Appellant's point is denied.

The judgment of the trial court is affirmed.

SMITH, J., concurs.

KAROHL, P.J., concurs in result.