STATE of Missouri,
Plaintiff–Respondent,

v.

Freddie MOTLEY, Defendant–Appellant.

Freddie MOTLEY, Defendant–Movant,

v.

STATE of Missouri, Respondent.

Nos. 56063, 57875.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 15, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 27, 1991.

Application to Transfer Denied April 9, 1991.

James S. McKay, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Judge.

The defendant Fred Motley (hereinafter Defendant) killed Dennis Binion (victim). Defendant was found guilty by a jury of second degree murder. Defendant appeals conviction and judgment denying his post-conviction motion without an evidentiary hearing. Defendant's conviction of second degree murder is affirmed and the motion court's denial of defendant's Rule 29.15 motion is affirmed.

The crucial evidence implicating the defendant was the testimony of Cleddus Dunlap (Dunlap), an eyewitness. Dunlap, upon direct examination, asserted his fifth amendment right against self-incrimination when asked about the facts the day that Binion was shot to death. After Dunlap's assertion, a side bar conference took place. The court permitted the prosecutor to impeach Dunlap based upon his deposition.

The prosecutor asked Dunlap if he told the police that he saw defendant in front of the bar. Dunlap responded that "I didn't tell them (police) I seen him in front of no bar." The prosecutor then asked Dunlap what he saw when he came out of the lounge. Dunlap said he saw nothing. The prosecutor then asked if Dunlap recalled telling the police that on the night of the murder that he saw the defendant armed with a baseball bat and a pistol chasing the victim around a car. Dunlap denied making the statement. Dunlap also denied telling the police that the defendant shot the

victim four or five times as he ran away because the defendant could not catch up with him.

Having laid this foundation, the prosecutor confronted Dunlap with statements that he had made in his deposition. Dunlap then recalled telling the police that he saw defendant chasing the victim around a car with a baseball bat and a Magnum or a big .38 pistol. Dunlap remembered that the victim kept ducking and running from defendant. Dunlap related that defendant held the gun like he was going to shoot at the victim and that the defendant was going to beat the victim with a bat if he got the chance. Dunlap kept telling defendant not to kill the victim. Nonetheless, defendant fired four or five shots into the victim's back who then fell and died. Dunlap witnessed all of this from a distance of three or four feet. Dunlap also stated that he did not want to testify but that the deposition statements helped him refresh his memory. Defense counsel objected twice during this direct examination on the grounds of "improper impeachment."

Defendant raises two points on direct appeal and one claim concerning his motion for post-conviction relief. Defendant contends the trial court erred (1) in finding defendant failed to make a prima facie case of racial discrimination in jury selection under *Batson* and (2) in allowing the state to introduce evidence by reading the witness Dunlap's deposition without laying a foundation that the deposition statements were inconsistent with the witnesses' testimony at trial, as required by § 491.074 RSMo 1986. Defendant contends the motion court erred in denying post-conviction relief without an evidentiary hearing because he alleged facts, which if true, would entitle him to relief.

The venire panel consisted of seventeen white persons and thirteen black persons.[1] The state struck two black males and three black females. The defendant struck two black persons. The jury consisted of five black persons and seven white persons.

1. A review of the transcript reveals that of the thirty venire persons the parties only qualified twenty-four. Of the twenty-four qualified ve- nire persons, the venire panel consisted of twelve white persons and twelve black persons.

A finding of discrimination or a finding of no discrimination is a finding of fact that shall not be set aside unless clearly erroneous. *State v. Antwine*, 743 S.W.2d 51, 66 (Mo.banc 1987). A finding is clearly erroneous when in light of the entire evidence, this court is left with the firm conviction that the trial court erred. *Id.*

The defendant may establish a prima facie case of racial discrimination by proving: (1) defendant is a member of a cognizable racial group; (2) the prosecutor exercised peremptory challenges to remove members of the defendant's race from the venire; and (3) that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude members of the venire from the jury on account of their race. *State v. Oliver*, 791 S.W.2d 782, 786–87 (Mo.App.1990). Defendant's establishment of a prima facie case of discrimination creates a rebuttable presumption that the prosecutor exercised peremptory challenges in a racially discriminatory manner. The state then has the burden of presenting neutral reasons for its strikes to rebut the presumption. *State v. Boyd*, 784 S.W.2d 226, 227 (Mo.App. 1989); *State v. Crump*, 747 S.W.2d 193, 195 (Mo.App.1988).

The victim, the key eyewitness, Dunlap, and the defendant are black. Following voir dire, the prosecutor used five of six peremptory challenges to strike blacks. Defense counsel also struck two blacks. Five blacks remained on the jury. In *Crump*, this court found that the fact that five blacks remained on the jury panel after the prosecutor used peremptory challenges "undercuts any inference of discrimination that may arise." *Crump*, 747 S.W.2d at 196. In addition to giving reasons for striking several of the members of the panel, the prosecutor advised the court that he relied on the *Crump* case and he believed that the defendant had failed to demonstrate to the court that he had made a prima facie case of racial discrimination. The defendant's attorney, in reply, agreed that one of the blacks should have been stricken, but the other four should not have been stricken. The trial judge then stated:

The Court finds that the defendant has not established a prima facie case as to discrimination.... and therefore the Assistant Circuit Attorney will not be required to give specific reasons as to the execution of his peremptory strikes.

Although the presence of five blacks on the jury undercuts any inference of discrimination, the Supreme Court of Missouri in *State v. Antwine*, 743 S.W.2d 51, 64, directed trial courts to consider the prosecutor's explanations for strikes as part of the process of determining whether defendant established the third element of the prima facie case of racial discrimination.

■ The admonition in *State v. Antwine*, 743 S.W.2d 51 at 65 (Mo. banc 1987) was applied in this case. The opinion advises that the trial judge must focus all of the information and intuitive perceptions he has gathered to determine whether the prosecutor's use of his peremptory challenges proceeds from a racially discriminatory motive. We thus place great responsibility in our trial judges because we are confident that they are "experienced in supervising voir dire, [and] will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors." *State v. Antwine*, 743 S.W.2d 51 at 65; (citing *Batson v. Kentucky*, 476 U.S. 79, 97, 106 S.Ct. 1712, 1723 (1986)). Here, the experienced trial judge heard the explanation of the prosecutor in response to the defendant's claim of discrimination and found that the defendant failed to make a prima facie case of discrimination. Defendant's first point is denied.

■ In his second point on appeal, appellant contends the trial court erred in allowing the state to read Dunlap's deposition without laying a foundation that the deposition statements were inconsistent with the witness' testimony at trial. On direct examination by the prosecutor, Dunlap identified himself, described the drinking he had done the day of the crime, described his own criminal record, and admitted he had seen both the defendant and the victim on the day of the killing. When the prose-

cutor asked if the victim got killed that night, Dunlap replied, "I wish to take the Fifth Amendment on that." After Dunlap denied telling the police that defendant shot the victim four or five times as the victim was running away and generally denied seeing anything, the prosecutor began to read a series of questions and answers from Dunlap's deposition. After reading each question and answer, the prosecutor asked, "Do you recall these questions and giving these answers?" Defendant's attorney objected twice that it was not proper impeachment. Dunlap testified that the statements made by him in the deposition were true and accurate. Dunlap further testified that he did not wish to testify in the trial and that he asked the police not to include his name in the report. Section 491.074 RSMo (1986) states:

> Notwithstanding any other provisions of law to the contrary, a prior inconsistent statement of any witness testifying in the trial of an offense under chapter 565, 566 or 568 RSMo, shall be received as substantive evidence, and the party offering the prior inconsistent statement may argue the truth of such statement.

Inconsistent statements are available as substantive evidence as soon as an inconsistency appears from the testimony. *State v. Bowman*, 741 S.W.2d 10, 14 (Mo. banc 1987). The only necessary foundation is the inquiry as to whether the testifying witness made the statement and whether the statement is true. *Id.* Here, the prosecutor laid the foundation required by *Bowman*, and Dunlap admitted making the statements and that they were true and accurate. The trial court properly admitted the deposition statements. Defendant's second point is denied.

Finally, defendant/movant contends the motion court erred in denying his Rule 29.15[2] motion without an evidentiary hearing because he alleged his trial counsel failed to investigate defense witness Baybaree Mayo and failed to investigate the bias of Dunlap. Furthermore, defendant/movant alleges the state committed prosecutorial misconduct by failing to reveal a deal with Dunlap. Defendant/movant contends that any of these alleged facts, if true, would entitle him to relief.

The standard for determining whether defendant is entitled to an evidentiary hearing requires that movant plead facts, not conclusions, which if true would entitle him to relief, and it must be shown that such factual allegations are not refuted by the record of the case. *Gillespie v. State*, 785 S.W.2d 725 (Mo.App.1990). The standard of review for a Rule 29.15 motion is limited to determining whether the motion court's findings and conclusions are clearly erroneous. Rule 29.15(j); *Thurston v. State*, 791 S.W.2d 893, 895 (Mo.App.1990). A motion court's judgment is deemed clearly erroneous only if, after a review of the entire record, this court is left with a definite and firm impression that a mistake has been made. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987).

When movant makes allegations of ineffectiveness of counsel, he must overcome a strong presumption that counsel exercised reasonable judgment. *State v. Hamilton*, 791 S.W.2d 789, 797 (Mo.App.1990). To prove ineffective assistance, movant must show that trial counsel's performance fell below a reasonable level and that this deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hamilton*, 791 S.W.2d at 797. Movant must satisfy *both* the performance element and the prejudice element to prevail. *Brummell v. State*, 770 S.W.2d 379, 380 (Mo.App.1989).

Defendant/movant's first allegation of ineffectiveness is that trial counsel failed to investigate a potential defense witness named Mayo. The selection of witnesses is a matter of trial strategy and is virtually unchallengeable. *Kayser v. State*, 784 S.W.2d 820, 822 (Mo.App.1990). When a claim of ineffectiveness of counsel is based on failure to locate and present witnesses, movant must show (1) that the witnesses could have been located; (2) that the witnesses would have testified if valid;

2. All references to rules are to Missouri Rules of     Court, 1990, unless otherwise noted.

and (3) that the testimony would have provided a viable defense. *Brown v. State*, 785 S.W.2d 759, 761 (Mo.App.1990). If a potential witness' testimony would not have unqualifiedly supported the movant, the failure to call such a witness is not ineffectiveness of counsel. *Hamilton v. State*, 770 S.W.2d 346, 348 (Mo.App.1989). Defendant/movant alleges Mayo's testimony would confirm he had been beaten with a baseball bat because she subsequently treated him for his injuries. Defendant/movant does not allege that Mayo witnessed any part of the actual fight or subsequent shooting, only that she treated him for injuries after the fact. Her testimony would support defense witness Torrence's testimony that the victim beat defendant/movant with a baseball bat, but it does not provide a viable defense. The motion court did not err in refusing to grant an evidentiary hearing because it could easily have found defense counsel was not ineffective in failing to call Mayo to testify.

Next, defendant/movant contends trial counsel failed to investigate Dunlap's bias against defendant/movant as a motive to lie because he had turned Dunlap's cousin in to authorities for social security fraud in the 1970's. The motion court found that defendant/movant had alleged no false testimony on the part of Dunlap and thus did not allege he was prejudiced. If anything, the record demonstrates Dunlap's extreme reluctance to testify against defendant/movant.

Also, defendant/movant alleges that the state failed to disclose a deal with Dunlap in which Dunlap would have received a reduced sentence on pending burglary charges in exchange for his testimony. In order to prevail on this point, movant must show (1) the witness' testimony was false; (2) the state used the testimony knowing that it was false; and (3) the conviction of movant was obtained as a result of that testimony. *Ray v. State*, 644 S.W.2d 663, 667 (Mo.App.1982). To support his allegation defendant/movant contended Dunlap told a fellow inmate known only as Jesse that his plea agreement had been lowered from twenty to seven years in exchange for his testimony. Defendant/movant contends failure to disclose amounted to prosecutorial misconduct. In fact, at trial Dunlap testified that both the police and the prosecutor told him they would talk to people and see what they could do about his burglary charge. The prosecutor on re-direct examination brought out that he had indicated to defendant/movant that he would look into his seven year sentence for burglary. The record reveals the jury was fully aware of Dunlap's criminal record, his reluctance to testify, and the rather indefinite promises by the police and prosecutor to look into burglary charges pending against Dunlap. Defendant/movant's third point is denied.

The trial judgment and the post-conviction judgment are affirmed.

GARY M. GAERTNER, P.J., and CRIST, J., concur.