**STATE of Missouri, Respondent,**

v.

**Raymond EDDINGTON, Appellant.**

**Raymond EDDINGTON, Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. 58109, 60593.

Missouri Court of Appeals,
Eastern District,
Division One.

May 5, 1992.

Melinda Kay Pendergraph, Columbia, for appellant.

William L. Webster, Atty. Gen., Rudolph R. Rhodes, IV, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Judge.

Appellant, Raymond Eddington, appeals from his jury trial convictions in the Circuit Court of the City of St. Louis of two counts of murder in the second degree, RSMo § 565.021 (1986), and two counts of armed criminal action, RSMo § 571.015 (1986), for which he was sentenced to a total of forty years' imprisonment. Appellant also appeals the denial of his Rule 29.15 motion after an evidentiary hearing. We affirm.

The evidence reveals that in the early morning hours of May 1, 1989, appellant visited with his girlfriend, Darlene Murphy, in her home at 2012 Jones Street in the City of St. Louis. Tonette Murphy, Darlene's[1] sister-in-law who shared the home with Darlene, testified she heard appellant and Darlene argue and then heard a gunshot. Clinton Murphy, Darlene's son, testified he was awakened by the gunshot and ran into the living room to find appellant holding a gun and his mother slumped on the sofa with a bullet wound in her side. Clinton Murphy called for his uncle, William Murphy, and ran to his mother's side. Appellant met the uncle in the hallway, shot him once in the chest and once in the back and fled. Darlene and William Murphy died of their wounds.

Appellant was indicted on June 8, 1989, on two counts of murder in the first degree and two counts of armed criminal action. On January 22, 1990, the cause proceeded to trial. At trial, appellant contended he had been sent out by Darlene and Tonette Murphy to pick up crack cocaine. When he returned, Tonette and Darlene smoked the crack cocaine and Darlene asked appellant to go out and pick up two more rocks of crack. Appellant complied. Upon his return, Darlene smoked one rock of the crack cocaine and asked for the other. When appellant could not find the second rock, Darlene got angry and yelled at appellant. Appellant testified he had never seen Darlene this angry and decided to remove a gun from between the cushions of a couch in the home. Appellant contended he had placed the gun there earlier in the year at the request of William Murphy. Appellant testified at trial he removed the gun because he believed Darlene would use it on him if he left it there. Appellant further testified that, as he knelt over to remove the gun from underneath the cushions of the couch, Darlene threw a knife she carried at him. Although appellant did not believe Darlene possessed any other weapon and knew she was sitting on the couch, appellant turned and fired.[2]

Appellant testified he then stood up to leave the house, but had difficulty opening the lock on the front door. At this time, William Murphy approached with a "hammer or something" in his hand. Appellant fired twice, opened the door and fled.

The case went to a jury on January 24, 1990. The court instructed the jury on lesser-included offenses and, after deliberating for six hours, the jury returned a verdict of guilty on two counts of second degree murder and two counts of armed criminal action. In its verdict, the jury recommended a sentence of ten years for the murder of Darlene Murphy, thirty years for the killing of William Murphy and three years for each of the armed criminal actions. On March 2, 1990, the trial court imposed sentence as per the jury's recommendation, ordering the armed criminal action sentences to run concurrently to the

---

1. Henceforth, Darlene Murphy will be referred to as "Darlene." No disrespect is meant in this frame of reference.

2. Testimony at trial indicated there was cocaine in Darlene's bloodstream when she was killed.

murder sentences and the murder sentences to run consecutive to each other.

On January 25, 1991, appellant filed a timely motion pursuant to Rule 29.15 requesting post-conviction relief. A timely amended motion was filed on April 1, 1991. On June 7, 1991, an evidentiary hearing was held on appellant's claims and, on June 24, 1991, the motion court issued its findings of fact and conclusions of law denying appellant relief. This appeal followed.

Appellant's sole claim on direct appeal is the trial court erred in giving an instruction defining proof beyond a reasonable doubt as evidence which leaves a juror "firmly convinced of the defendant's guilt." This point has been repeatedly rejected by Missouri courts and we see no reason to burden this opinion with yet another rejection. We affirm this point pursuant to Rule 30.25(b).

■ Appellant next claims error by the motion court in its findings that appellant did not receive ineffective assistance of counsel. We disagree with appellant's contentions.

Appellant first contends his trial counsel was ineffective in failing to interview Larry Brown, a potential defense witness, who appellant claims could have testified about both victims' reputations for violence in support of appellant's self-defense claims. The motion court found appellant's trial counsel's belief was reasonable, that the testimony of Mr. Brown would be irrelevant. We agree.

At the evidentiary hearing, Larry Brown testified Darlene had a reputation in the community for being "loud and boisterous" and that she carried a knife in her purse. Mr. Brown further testified that William Murphy had a reputation for being a drug dealer.

■ With respect to Darlene, the testimony of Mr. Brown was totally irrelevant and of no help to a claim of self-defense. There was no testimony of Darlene being violent, only loud and boisterous. The allegation that Darlene carried a knife in her purse is not, in itself, evidence that Darlene was of a violent disposition. Nor does the evidence bear out a claim of self-defense here. Even taking the evidence most favorable to appellant, it is clear that appellant shot Darlene after she had thrown her knife and when appellant believed she was unarmed and sitting on the couch. Self-defense only can be applied where there is the presence of real or apparently real necessity to kill in order to save oneself. *State v. Simms*, 602 S.W.2d 760, 761 (Mo. App., W.D.1980). Appellant's own testimony reveals the lack of such a situation.

With respect to William Murphy, Mr. Brown provided even less help. Mr. Brown characterized William Murphy as a drug dealer. This is irrelevant. No testimony was presented to show William Murphy had a reputation in the community for being violent in any way whatsoever. In addition, there was no testimony showing appellant knew of William Murphy's "reputation" for being a drug dealer. Point denied.

■ Appellant's final point on appeal contends his counsel was ineffective in failing to make a *Batson* objection after the State used five of six of its peremptory strikes to remove black jurors. The trial transcript reflects appellant's trial counsel informed the court she did not make a *Batson* objection because there were six blacks on the petit jury and "under the current case law, as I understand it, I don't have a leg to stand on, so I'm not going to waste the court's time."

Appellant has cited this court to several federal cases holding *Batson* applies in the above situation, however, the case law in Missouri at the time of appellant's trial held quite the opposite. At the time of appellant's trial, courts in this State relied on a defendant's equal protection rights in determining *Batson* cases and did not consider the juror's right to sit on the jury. See *State v. Vincent*, 755 S.W.2d 400, 403 (Mo.App., E.D.1988). Where six blacks remained on the jury, this court clearly would have held no equal protection violation occurred. *State v. Crump*, 747 S.W.2d 193, 195 (Mo.App., E.D.1988) (five blacks on jury); *Vincent*, 755 S.W.2d at 402 (five blacks on jury).

This view of *Batson* remained unchanged in Missouri until after the United States Supreme Court handed down *Powers v. Ohio*, — U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). After *Powers*, Missouri courts determined the number of blacks on the jury alone does not affect a *Batson* determination. *See State v. Robinson*, 811 S.W.2d 460, 463 (Mo.App., E.D. 1991).

*Powers* came down more than a year after appellant's trial. It can hardly be considered "ineffective" for appellant's counsel to fail to foresee its holding and the effect it would have on Missouri law. We do not require trial counsel to perform such miracles to escape claims of ineffectiveness.

Affirmed.

REINHARD, P.J., and CRANE, J., concur.