**STATE of Missouri, Plaintiff–Respondent,**

**v.**

**Russell VINCENT, Defendant–Appellant.**

No. 52885.

Missouri Court of Appeals, Eastern District, Division Three.

June 21, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 3, 1988.

Application to Transfer Denied Sept. 13, 1988.

---

Robert O'Hanlon, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Scott L. Templeton, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SMITH, Judge.

Defendant appeals from his conviction by a jury of illegal possession of a controlled substance, cocaine, and his sentence by the court as a persistent offender to fifteen years imprisonment. We affirm.

Defendant raises two issues on appeal. We deal first with his contention the evidence was insufficient to support the conviction. Defendant was observed by two police officers as he was standing on a sidewalk next to his car. During a fifteen minute period three persons approached him, handed him what appeared to be currency which he put into his left pocket. In each case defendant then reached into his right pocket and handed the person a small shiny package. The police officers approached defendant, placed him under arrest and retrieved from his right pocket a tinfoil packet containing a white powder. They also seized $130.00 in currency from his left pocket. The powder was chemically analyzed as cocaine.

Defendant contends the evidence did not establish his knowledge of the nature of the substance. That knowledge can be inferred from his exclusive possession of the packet and powder. *State v. Brown*, 683 S.W.2d 301 (Mo.App.1984) [2]. It further could be inferred from his conduct while under surveillance which indicated that he was selling similar packets. The evidence was sufficient to support the conviction.

Defendant's remaining point is a challenge to the jury on the basis that the prosecutor utilized her peremptory challenges in a racially discriminatory manner contrary to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The defendant was black. The prosecution utilized all of its peremptory challenges to remove six black veniremen and one alternate venireman. The jury as finally constituted contained seven whites and five blacks. In *State v. Crump*, 747 S.W.2d 193 (Mo.App.1988), we were confronted with a similar situation and an equally constituted jury. We held there that defendant failed to make a prima facie case under *Batson* because the eventual composition of the jury prevented the defendant from complaining that he was denied equal protection of the law. Some amplification of the reasons underlying *Crump* may be justified.

*Batson* was decided under the equal protection clause of the Fourteenth Amendment, not under the Sixth Amendment guarantee of "an impartial jury." What *Batson* did not identify was whose "equal protection" it was intended to guarantee. Two possibilities exist.

First, it is possible to read *Batson* as being directed solely to the defendant's right to equal protection. *Batson* itself,

and *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) whose principal holding *Batson* overturned *(See* White, J. concurring 106 S.Ct. 1725) were both cases in which a black was tried by an all-white jury created by the use of prosecution peremptory challenges to strike all blacks. The all-white composition of the juries in *Batson* and *Swain* is not without significance in determining the evil being addressed in *Batson.* Further the court relies upon *Strauder v. West Virginia,* 10 Otto 303, 100 U.S. 303, 25 L.Ed. 664 (1880) which held that "the State denies *a black defendant* equal protection of the laws when it puts him on trial before a jury from which members of his race have been purposely excluded." (Emphasis supplied). *Batson,* 106 S.Ct. at 1716. At page 1717 of *Batson* the Court states "Purposeful racial discrimination in selection of the venire violates a *defendant's* right to equal protection because it denies *him* the protection that a trial by jury is intended to secure." (Emphasis supplied).

Second, it is possible to read *Batson* as protecting the rights of minority members of the venire, of the community as a whole, and to protect the judicial system itself. The Court in *Batson* stated:

> "Racial discrimination in selection of jurors harms not only the accused whose life or liberty they are summoned to try. Competence to serve as a juror ultimately depends on an assessment of individual qualifications and ability impartially to consider evidence presented at a trial.... A person's race simply 'is unrelated to his fitness as a juror.' ... As long ago as *Strauder,* therefore, the court recognized that by denying a person's participation in jury service on account of his race, the State unconstitutionally discriminated against the excluded juror....

> "The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice.... Discrimination

within the judicial system is most pernicious because it is 'a stimulant to that race prejudice which is an impediment to securing to [black citizens] that equal justice which the law aims to secure to all others.'" (106 S.Ct. at 1718).

In many cases in which a *Batson* challenge is raised the determination of which of these two possibilities was the overriding concern of the court is probably academic. But in the case before us, and in *Crump,* it is not. Defendant makes no showing of specific prejudice to him arising from the jury by which he was tried. It stretches the concept of prejudice to the defendant beyond all reasonable limits to conclude that a different result would ensue, where unanimity by the jury is required, if defendant had been allowed six or more black jurors instead of five. Such a proposition ultimately relies on the idea that if enough black jurors are seated at least one will refuse to convict the defendant because of their shared race, a concept clearly at war with the language and spirit of *Batson.* It becomes necessary, therefore, in a case such as this, to determine which of the two possibilities was the motivating force in *Batson.* If the purpose is to protect the defendant's rights, then it is difficult to perceive prejudice or a denial of his rights to equal protection when the jury contains a substantial representation of his race. If the purpose is to allow defendant to serve as a protector of the rights of others, then arguably he can assert these rights if any member of the venire has been the victim of discriminatory strikes.

The purpose of a criminal trial is to determine the guilt or innocence of the defendant. It has not generally been the policy or concept of the law to place the defendant into the role of a "vicarious avenger" protecting the rights of others than himself. The area in which that role comes closest to existence is in the exclusionary rule of the search and seizure cases. In *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) the Court stated that the exclusionary rule is the "only effectively available way" to compel respect for the constitutional guarantee

against unreasonable searches and seizures. 81 S.Ct. at 1692. But in *Alderman v. United States,* 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) and *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) the Supreme Court refused to allow a defendant to challenge an unlawful search and seizure of another even when that search produced evidence damaging to the defendant. It is true that the search and seizure protections of the Fourth Amendment are private rights and equal protection has a more public nature.

In *Peters v. Kiff,* 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972) the Court held a white defendant had standing to challenge an illegally constituted jury from which blacks had been systematically excluded in violation of 18 U.S.C. 243. The court reviewed cases arising under the equal protection clause and acknowledged that those cases had been brought under the single analytical umbrella of the *defendant's* right to equal protection. 92 S.Ct. 2167. It based its decision, however, on the proposition that an illegally constituted jury was a denial to the defendant himself of due process not that defendant was denied equal protection. The dissent noted that the majority opinion had refrained from relying on the equal protection clause. It further noted that the equal protection cases: "have been predicated from the beginning on the judicially noticeable fact 'that prejudices often exist against particular classes in the community, which sway the judgment of jurors, and which, therefore, operate in some cases to deny to persons of those classes the full enjoyment of that protection which others enjoy ...' This presumption of prejudice derives from the fact that the defendant is a member of the excluded class...." (Burger, C.J. dissenting, 92 S.Ct. 2171).

Unless, therefore, we are to conclude that *Batson* was intended to expand the previous concepts to create the defendant as the protector of rights other than his own, we must assume that a legitimate *Batson* challenge exists only if prejudice to defendant, actual or implied, resulting in a denial of his equal protection right has occurred.

This is buttressed by the first requirement of *Batson* for a *prima facie* case, that the defendant show that *he* is a member of a racial group capable of being singled out for differential treatment. *Batson,* 106 S.Ct. at 1722. If the purpose of *Batson* is to place into a defendant's hands the role of assuring that prosecutors do not act in a discriminatory fashion, his race should have no bearing on his functioning in that role. We recognize that the second part of that first test is that the "prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." That language might indicate that *Batson* applies if any discriminatory challenge is made regardless of its impact on defendant. It appears to us that the overriding purpose of *Batson* is to assure the defendant that he will not be tried by a non-representative jury from which his race has been purposefully and discriminatorily removed. This is not to say that a *Batson* challenge cannot be invoked if there is a member of defendant's race on the jury for we do not conceive *Batson* to be a justification for tokenism. Nor do we preclude the possibility that a defendant with a jury reasonably approximating the racial composition of the venire may be able to establish, nevertheless, that the prosecution strikes prejudiced him. In this case neither tokenism nor prejudice has been claimed or shown. Under these facts we are unable to find that defendant has standing to raise a *Batson* challenge.

The judgment is affirmed.

KAROHL, P.J., and KELLY, J., concur.