**STATE of Missouri, Respondent,**

v.

**Matthew HUNTER, Appellant.**

**No. 56869.**

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 22, 1991.

Richard A. Harper, St. Louis, for appellant.

William L. Webster, Atty. Gen., Robert P. Sass, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Matthew Hunter, appeals his jury trial conviction for the offense of tampering in the first degree pursuant to RSMo § 569.080 (1986) for which he was sentenced to three years imprisonment. On appeal, appellant contends, *inter alia,* that the trial court erred in not quashing the jury panel after the State used peremptory challenges to remove blacks from the panel.

On July 17, 1988, Officer James Livingston of the Shrewsbury Police Department was working a stationary radar detail on Interstate Highway 44 at Shrewsbury Avenue. At approximately 6:30 p.m., Officer Livingston made a routine traffic stop. As he walked back to his patrol car to answer a radio call, Officer Livingston observed a black Cadillac travelling at a high rate of speed and cutting from lane to lane. Officer Livingston testified that the car approached him so closely that he had to jump on his patrol car to avoid being struck. Officer Livingston then got into his patrol car and gave chase, following the Cadillac into the St. Louis City limits. The Cadillac exited the highway at Grand, failed to negotiate a curve onto Detonty, spun, and hit two parked cars. Appellant, the driver of the Cadillac, exited the car and began running north on Grand. Officer Livingston left his patrol car and gave chase on foot but lost sight of the appellant when a truck pulled into his line of sight.

Officer Livingston then crossed Lafayette Avenue and had begun searching in the shrubbery near Incarnate Word Hospital when a citizen pulled up, told the officer he had seen the entire incident and asked the officer to get into the car. Officer Livingston did and the two of them continued north on Grand to search for appellant. After driving a short distance, Officer Livingston observed a couple in a passing car pointing back to the hospital. Feeling that there was no way that the subject could have gotten as far as they had driven, Officer Livingston requested the citizen to turn his car around and head south on Grand. The citizen did and Officer Livingston then observed appellant walking north on Grand. Officer Livingston told appellant to stop, gave a brief chase and caught the appellant.

Appellant was indicted on one count of tampering in the first degree for driving the stolen Cadillac and one count of assault in the second degree for almost running over Officer Livingston on Highway 44. On May 10, 1989, the cause went to trial and the jury convicted appellant of the tampering charge but acquitted him of the assault charge. This appeal followed.

Appellant first claims that the trial court erred in overruling his challenge to the State's peremptory strikes of three black venirepersons under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Appellant claims that, because the defendant was black and the venirepersons were black, a prima facie case of discrimination was made.

A prima facie case of racial discrimination is made by proving: (1) Defendant is a member of a cognizable racial group; (2) the prosecutor exercised peremptory challenges to remove members of the defendant's race from the venire; and (3) that these facts *and any other relevant circumstances* raised an inference that the prosecutor used that practice to exclude venirepersons from the jury on account of their race. *State v. Kilgore,* 771 S.W.2d 57, 62 (Mo. banc 1989). The appellant, thus, misinterprets the law when he states that only the first two requirements need

be met to make a prima facie case. To read *Batson* in such a manner could, conceivably, create absurd results:

> Picture, for example, a venire composed of 36 blacks. If the State uses its peremptory challenges to eliminate 6 members and fails to articulate what the defendant would deem legitimate, neutral reasons, the black defendant could raise a *Batson* challenge despite the fact that he was tried by an all black jury. This result is against the spirit of *Batson* and defies rationality.

*State v. Crump*, 747 S.W.2d 193, 196 (Mo. App., E.D.1988).

■ Nor does this court accept the State's argument that the mere presence of a single black on the jury would eliminate any *Batson* claim. While the presence of members of the appellant's race on the jury undercuts a claim of discrimination, *State v. Oliver*, 775 S.W.2d 308, 312 (Mo.App., E.D.1989); *State v. West*, 766 S.W.2d 103, 112 (Mo.App., E.D.1989), to hold that mere tokenism satisfied *Batson* would fly in the face of its purpose. See *State v. Vincent*, 755 S.W.2d 400, 403 (Mo.App., E.D.1988).

This court must also remain mindful, however, that the concern of the *Batson* court regarding a defendant's equal protection rights is not present every time a member of the defendant's race is removed from the jury panel. In *State v. Williams*, 784 S.W.2d 309 (Mo.App., E.D.1990), the defendant was tried by a jury composed of five blacks and seven whites with two black alternates. In addition, the victim and all of the witnesses in the case were black. *Williams*, 784 S.W.2d at 313. In the recently decided *State v. Burgess*, 800 S.W.2d 743 (Mo. banc, 1990) the defendant was tried by a jury consisting of four blacks and eight whites and the defendant and victim were both black. These cases held that no prima facie case of discrimination was made. Indeed, in such cases this court doubts that a prima facie case of discrimination could be made; the number of blacks left on the jury and the lack of advantage to the State in removing blacks from the jury, in and of themselves, demonstrate a lack of discriminatory intent. See also *State v. Muhammad*, 757 S.W.2d 641, 642 (Mo.App., E.D.1988) (jury comprised of four blacks and eight whites and victim, defendant and all witnesses were black).

With this background, we now review appellant's claim.

Following voir dire, the State exercised three of its peremptory challenges to remove blacks from the jury. Appellant's attorney objected and the court stated:

> *The Court:* Let the record reflect that the court takes judicial notice that the defendant is of the black race.
>
> Let the record further reflect that of the twenty-seven possible venire people that were used to select this jury of twelve, six were of the black race, and twenty-one were of the white race. The jury as it is now made up consists of two members of the black race and ten members of the white race.
>
> And although the State did exercise two (sic) of six peremptory challenges to strike black members from this jury panel, as the jury evolves, it is close enough proportionate to the venire from which it was selected to support the prosecutor and contradict the defense allegation that a prima facie of insidious discrimination in the exercise of peremptory challenges were made by the prosecutor.
>
> So the court taking note of all of the surrounding circumstances, including but not limited to the fact that this particular prosecutor has appeared before this court on numerous occasions, and this court through its observations finds that this prosecutor would never strike a person based upon race alone, the motion to quash the jury is denied and overruled.

The State also pointed out that both the victim and the defendant were black in this case.

An appellate court reviewing a *Batson* challenge reviews the substantive findings of the trial court. *State v. Kilgore*, 771 S.W.2d 57, 62 (Mo. banc 1989). The trial court's findings as to whether the prosecutor discriminated in the exercise of its peremptory challenges will be set aside by a reviewing court only if clearly erroneous. *Id.* A finding is clearly erroneous only

when the reviewing court is left with a definite and firm impression that a mistake has been committed. *Id.*

The trial court's findings here were based primarily on past observations of the State's attorney and on the percentage of blacks contained in the jury panel (22%) and on the petit jury as selected (16.5%). These factors are certainly relevant and should be considered by the trial court in determining whether there are "other relevant circumstances" demonstrating a prosecutor's discriminatory use of peremptory challenges.

What gives this court pause is the failure of the trial court to request racially neutral reasons for the peremptory strikes. In *State v. Antwine*, 743 S.W.2d 51 (Mo. banc 1987), the Supreme Court of Missouri directed trial courts to consider the State's explanation for its strikes as part of the process of determining whether defendant has established a prima facie case of racial discrimination. *Antwine*, 743 S.W.2d at 64.

In *State v. Burgess*, 800 S.W.2d 743 (Mo. banc, 1990), however, the Supreme Court of this State found no error where the trial court failed to consider the State's explanations before permitting the State to strike three black venirepersons. The court held that the fact that the jury was one-third black and that the victim and material witnesses in the case were black so severely undercut any inference of discrimination that it was not error for the court to not ask for explanations.

Racial discrimination is a blight and certainly should be eradicated. There are times, however, that the surrounding circumstances make any claim of racial discrimination appear extremely unlikely if not outright absurd. Could any reasonable person argue that a jury consisting of five blacks and seven whites with two black alternates is unfair where the victim and all witnesses are also black? See *State v. Williams*, 784 S.W.2d 309 (Mo.App., E.D. 1990). In such cases, this court would not expect the trial court to waste judicial time by requiring neutral explanations for strikes and extensive findings and conclusions on the lack of such discrimination. We, thus, hold that race neutral explanations from the State are only required where the surrounding circumstances are either neutral on the question of racial discrimination or point toward its presence.

In the present case, two blacks were left on the jury out of an original pool containing six blacks. One of the six black jurors was struck for cause. The State then used three of its peremptories to remove blacks. The fact that the State did not use all of its peremptory strikes to remove black veniremen certainly helps to undercut any inference of impermissible discrimination. *Williams*, 784 S.W.2d at 313–314. In addition, as the trial court found, the percentage of blacks contained on the jury panel and on the petit jury are sufficiently close to also undercut any finding of discrimination. While, admittedly, this is a closer case than that presented in *Burgess*, we do not find the findings of the trial court in this case to be clearly erroneous.[1]

The appellant's final argument is that the testimony of Officer Livingston that he saw a couple "pointing" was hearsay and that the trial court erred in admitting it. While this court has no doubt that pointing, under certain circumstances, can constitute an assertion, there is no indication in the record or in appellant's brief as to what the couple may have been asserting. In addition, both the officer and the citizen driving the car testified that they turned around because they believed the defendant could not have gotten as far as they had driven. Point denied. Affirmed.

REINHARD and CRIST, JJ., concur.

---

**1.** We caution trial courts, however, that the burden of hearing the State's neutral explanations in such close cases is certainly lighter than the burden imposed by a remand for findings on the issue would present.