STATE of Missouri, Respondent,

v.

Eric ROBINSON, Appellant.

Eric ROBINSON, Appellant,

v.

STATE of Missouri, Respondent.

No. 55056.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 18, 1991.

Cathy Rene Kelley, Henry B. Robertson, Melinda Kay Pendergraph, St. Louis, for appellant.

William L. Webster, Atty. Gen., Robert P. Sass, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Eric Robinson, appeals his convictions in the Circuit Court of the City of St. Louis on four counts of robbery in the first degree, RSMo § 569.020 (1986), four counts of armed criminal action, RSMo § 571.015 (1986), and one count of assault in the first degree, RSMo § 565.050 (1986), for which he was sentenced to a total of twenty years imprisonment. Appellant also appeals the denial of his Rule 29.15 motion without an evidentiary hearing. We remand.

Shortly after midnight on September 20, 1986, George Daaboul, Alphons Torregrossa, Gloria Maddalino and Russell Venz, left their jobs at the Clarion Hotel in Downtown, St. Louis. The four walked to a parking lot between Fourth Street and Broadway to see Miss Maddalino's new car. Mr. Venz and Mr. Torregrossa took the car out for a "spin" while Mr. Daaboul and Miss Maddalino waited in the parking lot.

Upon their return, appellant, wearing a stocking mask, approached the group carrying a gun in his hand. The appellant ordered the four on the ground and, when Mr. Daaboul was not quick to comply, appellant kicked Mr. Daaboul in the back. Mr. Daaboul testified that, prior to being kicked, he got a good look at appellant through appellant's mask. The appellant carefully frisked each of the four victims, checking their pockets and inside their shirts. The appellant then told the group "this is the name of the game, if you raise your heads up, I'm going to burst your brains out."

As appellant walked away from the group, Mr. Daaboul leapt up and, despite being shot at by appellant, got into his car and drove at the appellant. Appellant got into a car waiting nearby and a chase through the streets of St. Louis ensued. Mr. Daaboul testified that appellant, who was no longer wearing a mask, leaned out of the window of the getaway car and fired six shots in Mr. Daaboul's direction. Two of these shots hit Mr. Daaboul's car. Appellant's car then pulled into a dark alley. Mr. Daaboul, wisely, decided not to follow. At a lineup conducted the next evening, all of the victims were able to positively identify the appellant as the robber. The appellant later told the police, although he was not the robber, he was driving the getaway car.

Appellant was indicted on May 28, 1987. The trial commenced on April 26, 1988, and continued until April 29, 1988, at which time the jury returned its verdict of guilty.

Appellant filed a timely *pro se* 29.15 motion on July 12, 1989. On September 11, 1989, a timely, yet unverified amended motion was filed. On September 24, 1990, the motion court issued its findings of fact and conclusions of law denying appellant's post-conviction relief motion. This appeal followed.

One of appellant's principal claims on appeal is the trial court erred in denying his motion to quash the jury panel when the State used all six of its peremptory challenges to remove blacks from the venire.

The record reveals the original venire consisted of forty-two persons. Twenty-five members of the venire were black, seventeen white. The jury was selected

from the first thirty persons listed on the venire sheet. After strikes for cause, this group consisted of fifteen blacks and twelve whites. The State used all six of its peremptory strikes and its alternate strike to remove blacks from the venire. The appellant used one peremptory strike against a black venireperson.

Noting the victims in the case were all white, the appellant was black and the State's peremptory strikes were all used on black venirepersons, the appellant moved to quash the jury panel pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The trial court refused to hear the State's reasons for making its strikes and, relying on the final racial composition of the jury—seven blacks and five whites—and *State v. Crump*, 747 S.W.2d 193 (Mo.App., E.D.1988), the court denied the appellant's *Batson* motion.

In *Crump*, the State used all of its peremptory strikes to remove blacks from the jury and obtained a final jury panel of five blacks and seven whites. On appeal, the defendant claimed the trial court erred in finding the State's reasons for its strikes were race neutral. *Crump*, 747 S.W.2d at 195. This court determined the validity of the State's reasons for the strikes did not have to be addressed in that "a black defendant cannot complain that he was denied equal protection of the law when he is tried by a jury which is forty-two percent black." *Id.* The court further noted "the fact that five blacks remained on the jury panel after the prosecutor used her peremptory challenges undercuts any inference of discrimination that may arise." *Id.* at 196.

The holding in *Crump* was more fully explained in *State v. Vincent*, 755 S.W.2d 400 (Mo.App., E.D.1988). In *Vincent*, the State again used all of its peremptory strikes to remove black jurors and again the jury consisted of five blacks and seven whites. In holding the defendant in such a case could not claim a deprivation of equal protection of the law, this court held that *Batson* only protects the defendant's right to equal protection and does not protect the rights of minority members of the venire.

*Vincent*, 755 S.W.2d at 403. "If the purpose is to protect the defendant's rights, then it is difficult to perceive prejudice or a denial of his rights to equal protection when the jury contains a substantial representation of his race." *Id.* at 402.

This understanding of *Batson* was dealt a fatal blow in *Powers v. Ohio*, —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). In *Powers*, the Supreme Court of the United States noted *Batson* was designed to serve "multiple ends, only one of which was to protect individual defendants from discrimination in the selection of jurors." *Powers*, at ——, 111 S.Ct. at 1368. *Batson* was also intended to protect excluded jurors and the community at large from discriminatory strikes. *Id.* Further, the defendant was a proper party to raise the third-party equal protection claim of jurors excluded due to their race. *Id.* at ——, 111 S.Ct. at 1372.

In holding *Batson* protected the equal protection rights of the excluded venirepersons as well as those of the defendant, *Powers* effectively overruled *Crump* and *Vincent* to the extent they held that a large number of blacks on the petit jury, in itself, prevented a defendant from pursuing a *Batson* claim.

As the defendant has standing to claim the equal protection rights of others, the trial court should have requested reasons for the strikes from the State pursuant to *State v. Antwine*, 743 S.W.2d 51, 64 (Mo. banc 1987). The State claims this was not necessary in that the "surrounding circumstances" point to a lack of discrimination citing us to *State v. Hunter*, 802 S.W.2d 201 (Mo.App., E.D.1991).

In *Hunter*, the State used three of its six peremptory strikes to remove blacks from the venire. The final jury consisted of two blacks and ten whites. The trial court, noting that not all peremptory strikes were used to remove black persons from the venire, the proportion of blacks on the venire panel and the petit jury was close, and considering his own personal knowledge of the State prosecutor, held that no prima facie case was made and declined to hear the State's reasons for its peremptory strikes. This court held the State's reasons

were only necessary when the surrounding circumstances were "either neutral on the question of racial discrimination or point toward its presence." *Id.* at 204. Although noting the case before the court was a close one, the *Hunter* court found the trial court's findings and conclusions were not clearly erroneous. *Id.*

Many factors are still valid after *Powers* which may be used to indicate a lack of discriminatory intent in the State's peremptory strikes. See *State v. Griffin,* 756 S.W.2d 475, 482 (Mo. banc 1988) (failure of State to use all peremptory strikes to remove blacks from venire); *State v. Williams,* 784 S.W.2d 309, 313 (Mo.App., E.D.1990) (race of victim and material witnesses is same as defendant); *State v. Hunter,* 802 S.W.2d 201, 204 (Mo.App., E.D.1991) (court's past experience with State prosecutor and percentage of blacks on venire compared to percentage of blacks on petit jury); *State v. Smith,* 791 S.W.2d 744, 748 (Mo.App., E.D.1990) (percentage of strikes used on blacks as compared to total percentage of blacks on venire); *State v. Brown,* 747 S.W.2d 261, 264 (Mo.App., E.D.1988) (whether similarly situated white jurors were removed from venire); and *State v. Jones,* 747 S.W.2d 229, 231 (Mo. App., E.D.1988) (prosecutor's statements and questions on voir dire). Although many of these factors may apply in a given case, we note that a *Hunter* situation is extremely rare. Unless the trial court is clearly convinced of a lack of discriminatory intent, the State's reasons for its strikes should be requested and considered when the court determines a *Batson* claim.

Many of the above factors are largely dependant upon the State's reasons for its strikes and on the trial court's findings of fact. It is hard for this court to determine whether similarly situated white jurors were removed without knowing the reasons for the State's strikes. In addition, on appeal this court is provided merely with the cold printed word of the transcript, thus, it is certainly beyond this court's power to know the manner in which the State addressed the venire panel unless the prosecutor actually makes racist comments.

Other factors considered in determining whether the "surrounding circumstances"

raise an inference of impermissible discrimination provide no comfort to the State in this case. The State used all of its peremptory strikes to remove blacks from the venire, the percentage of strikes used to remove blacks was greatly disproportionate to the number of blacks on the venire and the victims and at least one material witness were all of a different race than the appellant. Of course, the percentage of blacks on the petit jury was similar to that on the venire panel, however, one factor alone is rarely dispositive of a *Batson* challenge. This is particularly true when, as here, the applicability of the factor in a given case is in spite of, rather than due to, the State's use of its peremptory strikes.

This court does not have a sufficient record with which to determine whether even a prima facie case of discrimination has been established. As a result, we must remand this case to the trial court for an evidentiary hearing to determine whether the prosecutor used his strikes in a discriminatory manner. The trial court must certify to this court a record of its proceeding. We will address the defendant's other points, if necessary, at that time.

Remanded for a rehearing not inconsistent with this opinion.

CRIST and AHRENS, JJ., concur.