STATE of Missouri, Respondent,

v.

Ivan VINSON, Appellant.

Ivan VINSON, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 57670, 60124.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 26, 1992.

Kathleen G. Green, St. Louis, for appellant.

William L. Webster, Atty. Gen., Robert P. Sass, Asst. Atty. Gen., Jefferson City, for respondent.

AHRENS, Judge.

Defendant, Ivan Vinson, appeals from a conviction of three counts of first-degree robbery in violation of § 569.020 RSMo 1986. Defendant also appeals from the denial of his motion for post-conviction relief after an evidentiary hearing. Defendant was sentenced as a prior and persistent offender to three consecutive terms of thirty years' imprisonment. We affirm.

The evidence adduced at trial established the following facts. On September 4, 1986, Claudia and Stuart Cofman attended a performance at the Fox Theatre, located on Grand Avenue in the City of St. Louis. The Cofmans left the theatre and returned to their parked car; Mrs. Cofman entered.

As Mr. Cofman began to enter the car on the driver's side, he was approached by a man who demanded the Cofmans' money and jewelry. The man reached across Mr. Cofman and forcibly removed Mrs. Cofman's necklace and rings. The man and Mr. Cofman exited the car, and the man pulled a gun on a rope from the pocket of his pants. The gun discharged, and the bullet struck the ground near Mr. Cofman's foot. The man demanded Mr. Cofman's wallet, and Mr. Cofman gave him the cash he had in the pocket of his pants. The man ran away down the street, and Mr. Cofman contacted the police. Roughly two months later, the Cofmans viewed an array of police photographs and identified defendant as the man who robbed them. The Cofmans also identified defendant at trial.

On October 9, 1986, Richard and Hortense McGhee were robbed while walking home from the Pine Lounge, located on North Vandeventer in the City of St. Louis. During the incident, a young man approached Mr. McGhee from behind, placed a sharp object against his back, and threatened to kill him. The man removed a wallet from Mr. McGhee's back pocket, threw it down a sewer, and ran away. After viewing photographs and a line-up, Mr. McGhee identified defendant as the robber. Mr. McGhee testified at trial that he was "pretty sure" defendant was the man who robbed him.

Shortly after midnight on November 1, 1986, Larry Thompson, Dwight Snelson, Tracy Barry, and Debra Turner stopped at the Naugle's restaurant on South Grand in the City of St. Louis. Barry and Turner placed an order and returned to the car to eat. Thompson and Snelson were standing approximately twenty feet from the car when a man approached them, drew a gun from his pants, and said, "We are going for a ride." The man took Thompson by the arm and led him to the car. Barry and Turner exited the vehicle after Thompson ordered them to do so. Thompson gave the man his car keys, and the man drove away. Thompson and Snelson identified defendant at a police lineup and at trial. Barry and Turner did not view a lineup, but identified

defendant at trial as the man who stole Thompson's car.

Defendant did not testify at trial, but presented the testimony of three alibi witnesses. Sandra and Eddie Edwards testified that defendant was employed as a salesperson for their company, EDE Enterprises, in September and October, 1986. Mrs. Edwards produced company sales receipts indicating defendant made door-to-door sales in Texas and California on the dates of the McGhee and Thompson robberies. A third witness, Albert Davis, testified that defendant was at his house on September 4, 1986, the date of the Cofman robberies.

The jury convicted defendant of three counts of first-degree robbery for the Cofman and Thompson robberies, but acquitted him of the second-degree robbery of Mr. and Mrs. McGhee. Defendant filed a Rule 29.15 motion to vacate sentence and judgment, which was denied after an evidentiary hearing.

In eight points, defendant contends the trial court erred in (1) overruling his motion for judgment of acquittal with regard to the Thompson robbery, because the state failed to prove it was defendant who committed the robbery; (2) overruling his motion to sever offenses, because joinder was improper under Rule 23.05; (3) failing to grant a mistrial after a state witness' emotional outburst; (4) overruling his motion to suppress the identifications of defendant made by certain state witnesses, because the identifications were based on an impermissibly suggestive lineup; (5) failing to declare a mistrial, *sua sponte*, after the prosecutor in closing argument personalized the case and allegedly referred to defendant's failure to testify; (6) submitting Instruction 4, MAI–CR 3d 302.04 [January 1, 1987]; (7) denying his Rule 29.15 motion after an evidentiary hearing; and (8) denying his motion to quash the jury panel. We consider each point in turn.

■ In point one, defendant contends the trial court erred in overruling his motion for judgment of acquittal with regard to the Thompson robbery. In reviewing this point, we view the evidence and all reason-

able inferences therefrom in a light most favorable to the verdict, disregarding all contrary evidence and inferences. *State v. Jordan*, 793 S.W.2d 905, 906–07 (Mo.App. 1990).

Defendant urges us to review the testimony of the state's witnesses, in that it is "opposed to known physical facts" and "so inherently impossible or so opposed to all reasonable probability as to be manifestly false." *See State v. Gregory*, 339 Mo. 133, 96 S.W.2d 47, 53 (1936); *State v. Williams*, 486 S.W.2d 201, 203 (Mo.1972). Defendant contends the identifications made at trial by two of the victims, Thompson and Snelson, are so dissimilar that a reasonable juror should have doubted the witnesses' credibility. Further, defendant argues that no testimony from any of the state's witnesses can coexist with that of Sandra and Eddie Edwards, defendant's alibi witnesses; defendant contends the "jury should have found the Edwards credible since there was no legitimate reason to disbelieve them."

We find no merit in defendant's argument. It is true that we are to determine whether there exists sufficient evidence from which reasonable persons could have found defendant guilty as charged. *State v. Vitale*, 801 S.W.2d 451, 456 (Mo.App. 1990). However, in so doing, it is not our function to weigh evidence or determine the credibility of witnesses. *State v. Buster*, 753 S.W.2d 118, 119 (Mo.App.1988). "The reliability and credibility of a witness is for the jury to decide." *State v. Sumowski*, 794 S.W.2d 643, 645 (Mo. banc 1990).

Here, the testimony of the state's witnesses is not so contradictory, inconsistent, and self-destructive as to render it inadmissible. *See State v. Ross*, 680 S.W.2d 213, 216 (Mo.App.1984). Essentially, defendant argues the witnesses' testimony is suspect because it contradicted that of his alibi witnesses. However, the jury was free to disbelieve the alibi testimony, *Buster*, 753 S.W.2d at 119, and we will not second-guess that determination here. There was

sufficient evidence adduced at trial from which reasonable jurors could have found defendant guilty. Point one is denied.

▆ In his second point, defendant contends the trial court erred in overruling his motion to sever the counts relating to the Cofman robberies from those relating to the McGhee and Thompson robberies, in that joinder was improper under Rule 23.-05. In reviewing defendant's argument, we first consider whether the offenses were properly joined in the indictment; if joinder was proper, we then determine whether the trial court abused its discretion in refusing to sever the offenses and trying them together in a single prosecution. *State v. Hughes*, 787 S.W.2d 802, 804 (Mo.App.1990).

Joinder is governed by § 545.140.2 RSMo 1986 and Rule 23.05. Pursuant thereto, two offenses may be joined where they are (1) of the "same or similar character" or (2) based on the "same transaction" or on two or more acts that are "connected" or that constitute parts of a "common scheme or plan." Only one of these criteria is necessary to support proper joinder. *State v. Clark*, 729 S.W.2d 579, 582 (Mo.App.1987). Further, offenses should be liberally joined to encourage judicial economy, and the trial court's decision whether to join the offenses should be based only on the state's evidence. *State v. Sims*, 764 S.W.2d 692, 696 (Mo.App.1988).

Here, we find the robberies sufficiently similar to allow joinder. All of the charges refer to the same type of offense, and all of the incidents occurred in the same general geographic area within a two-month period. In each case, a man approached the victims late at night or very early in the morning as the victims were leaving public food or entertainment establishments; two of the incidents occurred in parking lots near the victims' automobiles. In two of the incidents, the robber drew a handgun; in the third crime, the robber pressed a sharp object into the victim's back.[1] All of the

---

1. As the state correctly notes, defendant was acquitted of the robbery which was arguably the

least similar to the others.

robberies involved the threat of physical harm, and the robber fled after each crime.

We recognize the existence of some dissimilarities between the robberies. However, it is important to note that identical tactics are not required for proper joinder. *Id.* "Tactics which resemble or correspond in nature are all that is required." *Id.* Mindful of the rule favoring liberal joinder, we find the joinder of the offenses in the instant case proper.

Where the charges against a defendant have been properly joined, we will reverse a trial court's denial of a motion to sever only if the defendant can clearly show the court abused its discretion. *Clark*, 729 S.W.2d at 582. Defendant must make "a particularized showing of substantial prejudice" by the joinder of the offenses for trial. § 545.885.2 RSMo (Supp. 1991); Rule 24.07. "Substantial prejudice" is defined as "a bias or discrimination ... which is actually existing or real and not one which is merely imaginary, illusionary or nominal." § 545.885.2. In determining prejudice, the trial court should consider, *inter alia*, "the number of offenses charged, the complexity of the evidence, and whether the trier of fact is able to distinguish the evidence and apply the law intelligently to each offense." *Hughes*, 787 S.W.2d at 804.

Here, defendant was charged with three counts of first-degree robbery and one count of second-degree robbery; the counts involved three distinct robberies involving different locations and different witnesses. The evidence was not complex; rather, it consisted primarily of the victims' direct testimony. Further, the instructions specifically set forth the elements of each offense, and included MAI–CR 3d 304.12 [November 1, 1987], which instructs the jury to consider each offense separately. Nothing in the record indicates the jury was unable to distinguish the evidence or apply the law to each offense, and the fact that defendant was acquitted of the second-degree robbery indicates the jury was capable of distinguishing the proof for each count. *See State v. White*, Nos. 57545 and 59745, slip op. at 6, 1992 WL 31777 (Mo.App. February 25, 1992); *Hughes*, 787 S.W.2d at 807. We find no abuse of discretion in the trial court's refusal to sever the offenses. Point denied.

In point three, defendant alleges the trial court erred in refusing to grant a mistrial after an emotional outburst by Hortense McGhee, a witness for the state and eyewitness to the robbery of her husband. During defense counsel's cross-examination of Mrs. McGhee, the following exchange occurred:

Q. [Mr. McKay] Okay. You went down to see a lineup, is that right?

A. [Mrs. McGhee] Yes I did.

Q. And how much longer after this all occurred did you see the lineup?

A. What occurred?

Q. After this robbery occurred.

A. Not too long.

Q. Not too long?

A. I can't remember that far, but I have to say not too long, okay.

Q. You remember whether it was a matter of days? It wasn't anything like the next day was it?

A. Not too long, that's it. That's all I'm going to say.

Q. Was it the next day?

A. Not too long. That's in my mind, I am not going to say nothing else and you can't make me say nothing else.

MR. McKAY: Judge I would ask the Court to admonish the witness to answer the question.

WITNESS [Mrs. McGhee]: I said not too long, bastard. That's it.

MR. McKAY: Judge, I would—

WITNESS: I tried to tell him not too long. He can't keep on badgering me. I don't care, I will hit you right in your face. I told him not too long. Getting on my nerves. I told him that. He keeps on asking me the same question over, you know. I keep on answering the same question. He done it, he done it, he's going to jail. Dirty criminal, you're going to jail.

MR. MOORE [Prosecutor]: Let's approach the bench, Your Honor.

WITNESS: You're going to jail.

(Whereupon, the following proceedings were held at the bench out of the hearing of the jury):

WITNESS: (Continuing to speak): You are going to jail your damn self, you damn fool, you're nuts your damn self, killing all of them people.

MR. MOORE: I will ask for a recess.

THE COURT: Ladies and Gentlemen of the jury I must read you this admonition. Court is in recess.

(Whereupon, court was declared in recess for the jury. Admonition read to the jury).

THE COURT: We will have a short recess.

WITNESS: He ain't going to get off. You ain't going to get off.

MR. McKAY: Judge, I will ask this witness be removed from the court room.

WITNESS: I will be removed. You need to be in the workhouse your damn self. You think you're so damn smart, all of you.

THE COURT: Close the door. Counselor, go outside, put the defendant up, and you go outside until we get her in the witness room. Just go outside. You go back with your client.

WITNESS: I know what I'm talking about. He say nothing I want to say.

THE COURT: Counselor, you go back there. I am going to let you make your motion, just go back in there. I don't want her to attack you or anything.

WITNESS: I know what he did to my husband and he ain't going to get away with it and that old fucking lawyer.

THE COURT: Just calm down. Just let her calm down, take your time. (Speaking to the witness' husband).

WITNESS: I know what he did.

THE COURT: Okay, let her calm down.

WITNESS: I'm not crazy. I know what he did to you.

During the recess and out of the jury's hearing, defense counsel moved for a mis-

trial. In so doing, he indicated Mrs. McGhee had been "screaming at the top of her lungs" and expressed a concern that the court reporter was unable to record all that had transpired. The trial court denied the motion, noting Mrs. McGhee's responses to the same line of questioning on a prior motion and indicating his confidence that the court reporter was able to record all that occurred during the incident. The court struck all of Mrs. McGhee's testimony from the record and orally instructed the jury to disregard it "just as if it had never transpired." Further, the court gave a written instruction admonishing the jury that "no weight or inferences may be drawn from any testimony stricken and such testimony should play no role in your deliberations whatsoever."

A mistrial is a drastic remedy and should only be used in the most extraordinary circumstances. *State v. Wolfe*, 793 S.W.2d 580, 587 (Mo.App.1990). We review the denial of a motion for mistrial only for an abuse of the trial court's discretion, *id.*, and we recognize that the trial court is in a better position to determine any prejudicial effects from an alleged error. *State v. Shelton*, 779 S.W.2d 614, 616 (Mo.App. 1989). "If reasonable minds can differ as to whether a mistrial should have been declared, the trial court's exercise of discretion must be upheld." *State v. Johnson*, 672 S.W.2d 160, 163 (Mo.App.1984).

We find no abuse of discretion here. Clearly, Mrs. McGhee's emotional outburst was spontaneous. The trial court called a recess immediately thereafter and ordered the witness removed from the courtroom. Mrs. McGhee's testimony was completely stricken from the record, and the jury was instructed to disregard it. Further, in view of Mrs. McGhee's obvious tendency to become overagitated when questioned, there is no assurance a similar outburst would not occur upon retrial if a mistrial were declared.[2] *See id.*

Importantly, defendant's acquittal of the count relating to the McGhee robbery is

---

2. Here, we note Mrs. McGhee's similar display of hostility at the hearing on defendant's motion   to suppress.

evidence the incident did not prejudice the jury against defendant. Nothing but speculation supports defendant's contention that the acquittal more likely resulted from Mr. McGhee's weak identification of defendant than from Mrs. McGhee's outburst. In fact, Mrs. McGhee's attack could just have likely prejudiced the state as defendant, in that the jury could have attributed any diminution in Mrs. McGhee's credibility to her husband, Mr. McGhee, who served as a witness for the state. Further, nothing supports defendant's bare allegation that although he was acquitted of the McGhee robbery, Mrs. McGhee's testimony "tainted his entire trial," and nothing indicates the trial court's curative action did not sufficiently remove any prejudice that may have resulted from the outburst. We find no abuse of discretion, and point three is denied.

■ In point four, defendant contends the trial court erred in overruling his motion to suppress the out-of-court identifications of defendant made by Larry Thompson, Dwight Snelson, Richard and Hortense McGhee, and Claudia Blocker (a witness to the Cofman robbery). Defendant contends the lineup at which the witnesses viewed defendant was unduly suggestive, in that (1) the witnesses sat in the same room and saw which person the others identified; and (2) some witnesses pointed to the man they identified, and at least one witness based her identification on those made by the other witnesses. Defendant contends the suggestive pre-trial identification procedures tainted the in-court identifications. Further, defendant argues the witnesses' testimony should not have been admitted because their prior descriptions of the robber were inaccurate.

In considering the admissibility of identification testimony resulting from an alleg-

edly suggestive pre-trial identification procedure, we undertake a two-part determination: (1) whether the procedure was suggestive; and (2) if it was suggestive, what impact the procedure had upon the reliability of the witnesses' identification. *State v. Morant*, 758 S.W.2d 110, 117 (Mo.App. 1988).[3]

Here, the witnesses viewed the lineup in the same room.[4] However, the police seated the witnesses apart from one another and cautioned them not to converse. During the viewing, the witnesses raised their hands and separately told a police officer the identity of the person they had chosen; they did not identify the person aloud. Defendant's claim of suggestiveness relies almost exclusively on the testimony of Hortense McGhee, whose version of what occurred at the lineup differed from that of every other witness. At the hearing on defendant's motion, Mrs. McGhee first testified that she had viewed the lineup alone, and that the police had taken the witnesses into the viewing room "one by one." She then testified she had viewed the lineup together with the other witnesses, while her husband sat beside her. In response to a series of leading questions, Mrs. McGhee further testified she saw other witnesses point at defendant before she identified him.

Importantly, the jury acquitted defendant of the McGhee robbery, and, as discussed in point three, her trial testimony was stricken due to her emotional outburst on the witness stand. With the exception of Mrs. McGhee's testimony, there is no evidence indicating the witnesses made any suggestions concerning defendant's identity.[5] Further, nothing in the record indicates the police in any way suggested that the witnesses choose defendant. The procedure utilized here was not impermissibly

---

3. We are not persuaded by defendant's contention that the "reliability" portion of the test is "meaningless."

4. Contrary to the testimony of every other witness, Richard McGhee testified that the witnesses individually viewed the lineup.

5. Defendant references Claudia Blocker's testimony in arguing that some of the witnesses

pointed toward defendant during the lineup. Although Ms. Blocker first testified that she "guessed" she had pointed out defendant to one of the police officers conducting the lineup, she stated she "didn't know" when asked again whether she had pointed to defendant or had simply told the officer her choice. This testimony is equivocal at best and does not support defendant's argument.

suggestive, and we need not consider defendant's argument that the allegedly suggestive pre-trial identification procedure tainted the in-court identifications. *Id.*

■ Similarly, we need not address the question of reliability, since that issue is only reached if it is determined that the pre-trial identification procedure was impermissibly suggestive. *Id.* at 117–18; *State v. Pieron,* 755 S.W.2d 303, 308 (Mo. App.1988). Defendant's argument concerning the alleged inaccuracy of the witnesses' prior descriptions of defendant relates to the question of the identifications' reliability, not the suggestiveness of the pre-trial identification procedure. *See State v. Williams,* 717 S.W.2d 561, 564 (Mo.App. 1986). Likewise, the circumstances relating to the identifications go to the weight of the witnesses' testimony, not its admissibility. *Pieron,* 755 S.W.2d at 308; *Morant,* 758 S.W.2d at 118. The trial court did not err in overruling defendant's motion to suppress. Point denied.

In his fifth point, defendant contends the trial court plainly erred in failing to declare a mistrial, *sua sponte,* after sustaining defendant's objection to the prosecutor's personalization of the case in closing argument. Defendant further contends the court plainly erred in failing to intervene when the prosecutor in his closing argument allegedly commented on defendant's failure to testify. Defendant failed to object to the latter comment and failed to move for mistrial after the court sustained his objection to the prosecutor's personalization of the case. Defendant included neither point in his motion for new trial. Conceding he has failed to preserve either issue for review, defendant requests this court to review his claims for plain error pursuant to Rule 30.20.

■ Substantial latitude is allowed in closing argument, and an improper argument does not justify relief under the plain error rule unless it has a decisive effect on the jury. *State v. Childers,* 801 S.W.2d 442, 445 (Mo.App.1990). It is the defendant's burden to demonstrate such an effect. *Id.* Further, a court should rarely grant relief on assertions of plain error

with respect to closing argument, since in the absence of objections and requests for relief, the trial court's options are limited to uninvited interference with the summation and increased error as a result of such intervention. *State v. Banks,* 789 S.W.2d 81, 82–83 (Mo.App.1990). We recognize that with respect to matters contained in closing argument, "trial strategy looms as an important consideration and ... assertions [of plain error] are generally denied without explication." *State v. Wood,* 719 S.W.2d 756, 759 (Mo. banc 1986).

We have carefully reviewed defendant's assertions of error and find no sound, substantial showing of manifest injustice requiring reversal. *See State v. Bogue,* 788 S.W.2d 772, 775 (Mo.App.1990). Point denied.

■ Relying on *Cage v. Louisiana,* —— U.S. ——, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), defendant next alleges the trial court plainly erred in submitting Instruction 4, MAI–CR 3d 302.04 [January 1, 1987]. Defendant contends the instruction improperly defines "proof beyond a reasonable doubt" and thereby reduces the state's burden of proof below that required by the Due Process Clause. This argument has been specifically and repeatedly rejected by our supreme court. *State v. Griffin,* 818 S.W.2d 278, 282 (Mo. banc 1991). Point six is denied.

In point seven, defendant appeals the denial of his Rule 29.15 motion after an evidentiary hearing. Our review of defendant's claims is limited to a determination of whether the motion court's findings, conclusions, and judgment are "clearly erroneous." Rule 29.15(j); *State v. Carey,* 808 S.W.2d 861, 867 (Mo.App.1991). The findings and conclusions are "clearly erroneous" only if a review of the entire record leaves this court with a definite and firm belief that a mistake has been made. *Bibbs v. State,* 784 S.W.2d 315, 317 (Mo. App.1990).

■ First, defendant contends he was denied a fair trial when the trial court failed to declare a mistrial, *sua sponte,* after an outburst by Hortense McGhee, a

state's witness and eyewitness to the robbery of which defendant was acquitted.

Assertions of trial error are not ordinarily cognizable in a post-conviction proceeding. *Hood v. State*, 785 S.W.2d 565, 566 (Mo.App.1990). To be entitled to relief on such assertions, a movant must prove the claims amounted to constitutional violations and must show exceptional circumstances which justify not raising those grounds on direct appeal. *Id.* Here, defendant has made no attempt to show the existence of exceptional circumstances and has in fact received full review of this claim in point three of his direct appeal. There is no support for defendant's contention that he is entitled to appellate review of the identical claim of trial error both on direct appeal and in a post-conviction proceeding. The motion court was not clearly erroneous in finding the claim was a matter for defendant's direct appeal.

Next, we consider each of defendant's six claims of ineffective assistance of counsel. To prevail on his assertions of error, defendant must show that counsel's performance did not meet reasonable professional standards and that this ineffectiveness affected the outcome of the trial. *Id.* Further, "[t]he motion court should make every effort to eliminate the distortion wrought by hindsight and to evaluate the challenged conduct from counsel's perspective at the time of the conduct." *Bevly v. State*, 778 S.W.2d 297, 298 (Mo.App.1989). Trial counsel is strongly presumed to have rendered adequate assistance and to have exercised reasonable professional judgment in making all significant decisions. *Lane v. State*, 778 S.W.2d 769, 770 (Mo.App. 1989).

■ Defendant first claims trial counsel was ineffective in failing to introduce sales receipts and weekly earnings sheets allegedly showing defendant conducted door-to-door sales in California on October 31, 1986, and the week of October 25, 1986. Defendant contends the records would have corroborated the testimony of his alibi witnesses and proven he was in California on November 1, 1986, the date of the Thompson robbery.

At trial, defense counsel introduced the daily sales receipts for November 1, 1986. At the hearing on defendant's motion, counsel testified he did not recall defendant specifically asking him to introduce the weekly earnings records or the sales receipts for dates other than the date of the Thompson robbery. Further, counsel testified he did not introduce the weekly earnings and expense records because they did not indicate where defendant was working, they were not signed, and there were "relevance problems" because the records included dates other than those of the crimes charged. In its findings, the motion court noted counsel's testimony that the decision not to introduce the earnings sheets was a method of trial strategy. The court also found the records were cumulative to other exhibits and testimony that defendant was continuously employed by EDE Corporation from September 13, 1986, through November 1, 1986. Lastly, the court found the records were immaterial, because there was no issue that defendant was so employed.

We find no prejudice in counsel's failure to introduce the records. Defendant does not dispute that counsel introduced other evidence and testimony indicating defendant was in California on the date of the Thompson robbery and on the previous day. The failure to present cumulative evidence does not constitute ineffective representation. *See Carey*, 808 S.W.2d at 868. The findings of the motion court are supported by the record and are not clearly erroneous.

■ Next, defendant contends trial counsel was ineffective in failing to take and introduce the depositions of California witnesses to whom defendant, as an employee of EDE Enterprises, allegedly sold a cleaning product on the date of the Thompson robbery. In claiming trial counsel was ineffective in failing to locate and present witnesses, a movant must show that (1) the witnesses could have been located through reasonable investigation; (2) they would have testified if called; and (3) their testimony would have provided a viable defense. *See Bibbs*, 784 S.W.2d at 317–18.

The record indicates trial counsel received the names of approximately twenty-three California witnesses one week before trial; it took motion counsel nearly seven months to produce the testimony of three of these witnesses for the evidentiary hearing. Defendant has failed to show trial counsel could have located any of the witnesses in the short time available to him, and the record indicates otherwise. Further, defendant has failed to show that any of the witnesses would have testified if called. As the motion court noted, this question was not included in the written deposition questions propounded to the three witnesses whose testimony defendant produced at the evidentiary hearing. Finally, nothing indicates the three witnesses' testimony could have provided a viable defense, in that none could testify he or she was with defendant at the time of the Thompson robbery. *See id.* at 318. The motion court's findings are not clearly erroneous.

■ In his third subpoint, defendant contends trial counsel was ineffective in failing to produce a handwriting expert to testify regarding the authenticity of defendant's signature on the sales receipts from November 1, 1986. At trial, counsel did present the testimony of defendant's employer, Sandra Edwards, who verified that it was defendant's signature on the receipts from that date. On this point, the motion court found there was no reason to believe the outcome of the case would have been different had counsel produced the expert testimony, since the issue in the case involved when the receipts had been signed and not whether defendant had signed them. We find no clear error.

■ Next, defendant alleges trial counsel was ineffective for failing to introduce records indicating he was arrested in California two days after the Thompson robbery. Defendant alleges the records would have bolstered the credibility of his alibi witnesses. At the evidentiary hearing, trial counsel testified he did not introduce the records because they constituted evidence of other crimes, the arrest was not on the date of the Thompson robbery, and there was a risk that the jury would learn the reason for the arrest. The motion court found the records were irrelevant, in that they were not within the time of any of the offenses charged. Further, the court found counsel's decision with regard to the records entirely a matter of trial strategy.

Essentially, defendant takes issue with the reasonableness of counsel's strategic decision. However, choice of trial strategy is not a foundation for finding ineffective assistance of counsel. *State v. Meadows*, 785 S.W.2d 635, 643 (Mo.App.1990). Defendant has failed to overcome the presumption that counsel exercised reasonable professional judgment in choosing not to introduce the records.

■ In subpoint five, defendant alleges trial counsel was ineffective in failing to introduce the testimony of Tony Bishop, a deputy at the St. Charles County Sheriff's Department. At the evidentiary hearing, Bishop testified that Stuart Cofman, a robbery victim and witness for the state, posed as defendant's attorney to gain access to the jail cell in which defendant was being held on unrelated charges in St. Charles. Defendant contends this evidence would have impeached Cofman's credibility. On this point, trial counsel testified he chose not to present the evidence because it constituted evidence of other crimes.

■ Defendant's argument is meritless. As the motion court found, trial counsel is not ineffective for failing to call witnesses to impeach the victim's credibility. *Lane*, 778 S.W.2d at 771. Further, the court was not clearly erroneous in finding counsel's decision was a matter of trial strategy. A decision not to call a witness to testify is virtually unchallengeable. *Childress v. State*, 778 S.W.2d 3, 6 (Mo. App.1989).

In his sixth and final subpoint, defendant claims trial counsel was ineffective in failing to introduce evidence indicating that officers in St. Charles confiscated defendant's shoes prior to his appearance in the lineup. Defendant contends the evidence would impeach the credibility of Officer

Dierkes, who testified at trial that defendant requested to remove his own shoes.

As noted in subpoint five, trial counsel is not ineffective for failing to produce impeachment evidence. *Lane*, 778 S.W.2d at 771. Further, defendant presented no evidence on this issue at the evidentiary hearing. Accordingly, he has waived this claim. *Jordan*, 793 S.W.2d at 907. Point seven is denied.

■ In his eighth point, defendant contends the trial court erred in denying his motion to quash the jury panel under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Defendant requests that we remand this case "for a hearing on whether the prosecutor used his strikes in a discriminatory manner."

After the state made its peremptory strikes, but prior to defendant moving to quash the jury panel, the following proceedings were held:

THE COURT: Okay, I am going to disallow two of them.

[PROSECUTOR]: Without making a record?

THE COURT: Don't need to make a record. If you take all six you give two of them back, any two you want.

[PROSECUTOR]: I am going to put my reason on the record, though, I should.

THE COURT: Anytime you take six—it's prima facie. Let the record indicate that I am black too, that I have observed that jury and that the state has taken six blacks off. Now any two you want to give back is all right with me.

[PROSECUTOR]: I assume—

[DEFENSE COUNSEL]: Yes, Judge, just for the record here—

THE COURT: I am going to make one. I am going to enter my appearance as co counsel and make one.

Defense counsel then moved to quash the jury panel "on the ground that the state has used all six of its pre-emptory [sic] challenges to strike black members of the

venire" which raised a *"prima facie* case under the decision in Batson versus United States." The trial court found the existence of a prima facie case, instructed the prosecutor to "give two of them back," and permitted the prosecutor to state the reasons for each of his peremptory strikes.[6]

The trial court found the prosecutor had a permissible basis for making his first peremptory strike. However, the trial court disallowed the second and third peremptory strikes based on the prosecutor's stated reasons. The trial court allowed the remaining peremptory strikes after hearing the prosecutor's reasons for those strikes. Defense counsel then requested clarification of the ruling on his motion to quash:

[DEFENSE COUNSEL]: Judge, I would like the record to be clear though [sic] I understand your ruling. As I understand it is that you have accepted state's [sic] explanation for their striking four of six blacks.

THE COURT: That's correct. I have accepted the state's reasons for striking four and two I am disallowing.

[DEFENSE COUNSEL]: Okay. I would state for the record, Your Honor that I nevertheless believe the state's striking four out of the remaining four blacks—at first they struck six blacks. I still think that forms a *prima facie* case.

THE COURT: That's denied pursuant to the Missouri cases holding that where you have a proportionate representation it's sufficient.

(Tr. 159–160).

Apparently, the trial court's last statement was a reference to *State v. Crump*, 747 S.W.2d 193 (Mo.App.1988), and *State v. Vincent*, 755 S.W.2d 400 (Mo.App.1988), which held that a black defendant could not make a *prima facie* case of purposeful discrimination when the jury "was forty-two percent black," *Crump*, 747 S.W.2d at 195–96, or contained "a substantial representation of his race." *Vincent*, 755 S.W.2d at 402. As this court noted in *State v. Robinson*, 811 S.W.2d 460 (Mo.App.

---

6. We do not endorse the trial court's initial approach of forcing the state to "give back" two of its peremptory challenges. However, the trial judge then proceeded to hear the prosecutor's reasons and ruled on the validity of those reasons.

1991), the United States Supreme Court's holding in *Powers v. Ohio*, — U.S. —, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) "effectively overruled *Crump* and *Vincent* to the extent they held that a large number of blacks on the petit jury, in itself, prevented a defendant from pursuing a *Batson* claim." *Robinson*, 811 S.W.2d at 462.

Regardless of the trial court's reliance on the law as stated in *Crump* and *Vincent*, defendant was not precluded from pursuing a *Batson* claim. The trial court found a *prima facie* case of discrimination was established and conducted a hearing on the motion to quash. The trial court's statement regarding proportionate representation was made after the prosecutor stated his reasons for making his peremptory strikes and after the trial court ruled on the validity of those reasons.

Defendant contends that "the trial court made up its mind that four strikes were going to be allowed—and so, were supposedly not pretextual—before he heard the reasons for the strikes." Defendant argues the trial court "could not have known that exactly two strikes were not pretextual before he heard the reasons for all six strikes. This action, coupled with his statement that he was denying the motion to quash the panel pursuant to the 'Missouri cases holding that where you have a proportionate representation it's sufficient', show that he was relying on *Crump* when he decided to allow four strikes before hearing any reasons." The record shows, however, that in ruling on each of the prosecutor's peremptory strikes, the trial court considered the prosecutor's stated reasons for making those strikes. A hearing was held on whether the prosecutor's strikes were discriminatory; and the trial court ruled four of the strikes were not racially motivated. Defendant does not challenge the prosecutor's stated reasons for making those four strikes allowed by the trial court. Accordingly, we deny defendant's request that the case be remanded for another hearing on the prosecutor's reasons for striking the black venirepersons. Point eight is denied.

The judgments of the trial court and motion court are affirmed.

CRANDALL and SIMON, JJ., concur.